## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

GARY LYNN TUNE,              )
                                     )
        Plaintiff,            )
                                     )
        v.                    )   Case No.  11-3443-CV-DPR
                                     )
MICHAEL J. ASTRUE, Commissioner of  )
Social Security,                )
                                     )
        Defendant.       )
                                     )

## <u>MEMORANDUM AND ORDER</u>

An Administrative Law Judge ("ALJ") denied Social Security Disability Insurance Benefits to Plaintiff Gary Lynn Tune in a decision dated April 26, 2011 (Tr. 14-24). The Appeals Counsel denied review (Tr. 1-3). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. For the reasons set forth below, the decision of the Commissioner of Social Security is **AFFIRMED**.

### FACTUAL BACKGROUND

Claimant Tune sought disability benefits alleging back pain and left leg numbness (Tr. 220). Tune alleged his disability began June 7, 2008 (Tr. 216). He claimed past work as a deckhand and a logger (Tr. 222).

*Medical Records*

Tune's medical records show that he injured his back in June 2008 while working as a deckhand on a barge. After the injury he received four sessions of physical therapy from Ozarks Medical Center Rehabilitation Services. His physician released him to return to work on July 11,

2008. At his last therapy appointment on July 11, 2008, he rated his pain at zero on a scale from zero to ten (Tr. 296).

Even after the physical therapy, however, the claimant continued to experience back pain. On March 4, 2009, Dr. Wade Ceola performed a left L4-5 and left L5-S1 discectomy for nerve root decompression. The claimant's preoperative diagnosis was lumbar disc herniation and lumbar radiculopathy (Tr. 306). In a post-operative visit on April 3, 2009, Tune reported he was doing well, and that his leg pain was improved. On May 7, 2009, however, he reported continued low back pain and left leg numbness. A course of aquatherapy gave him minimal relief. He was prescribed physical therapy three times per week for six weeks, and he was allowed to return to "light duty" work limited to lifting and pulling no more than twenty pounds. On June 23, 2009, Dr. Ceola noted "good relief" with the course of physical therapy, although the claimant complained of continued low back pain and left leg numbness. Dr. Ceola released him to work without restrictions, but recommended ten percent disability. On August 12, 2009, Tune reported continued low back pain and left leg numbness and discomfort with both sitting and standing. Dr. Ceola referred him to Dr. Lennard for a disability and impairment rating. Dr. Ceola noted he could return to work with restrictions (Tr. 320-331).

An October 13, 2009, post-operative MRI showed mild degenerative disc bulging at L3-L4; prior left hemilaminotomies and posterior discectomies at L4-5 and L5-S1 with postoperative enhancing granulation tissue at each operative site; no evidence of residual or recurrent disc protrusion or disc fragments; and L4-5 and L5-S1 facet joint hypertrophy with L4 and L5 neural foraminal encroachment (Tr. 352).

On January 8, 2010, claimant saw Dr. Thomas Brooks at the Center for Advanced Pain Management. The claimant complained of continued low back and left leg pain. After

examination, Dr. Brooks diagnosed lumbar spondylosis, lumbar radiculopathy, and lumbar postlaminectomy syndrome (Tr. 424-26). Dr. Brooks performed epidural steroid injections on claimant on January 21 and February 4, 2010 (Tr. 390-408).

Claimant saw Dr. Lewandowski at the Medical Clinic of Willow Springs on April 13, 2010. Claimant complained of depression, low back pain, and left leg numbness. Dr. Lewandowski diagnosed chronic and worsening back pain and prescribed Neurontin for pain. On May 26, 2010, Dr. Lewandowski noted that the Neurontin was helping claimant with his pain "somewhat." He increased the dosage of Neurontin and referred claimant to a neurologist (Tr. 427-34).

Claimant returned to his neurosurgeon, Dr. Ceola, on June 9, 2010, and complained continued low back pain and left leg numbness. Claimant reported his pain was worse with standing and walking. Dr. Ceola diagnosed ongoing herniated lumbar disc and lumbar radiculopathy. On July 28, 2010, Dr. Ceola reviewed claimant's October 2009 MRI. He concluded there was no showing of "residual or recurrence." Dr. Ceola noted the possibility of a spinal cord stimulator. He noticed "no compressive lesion and no instability and would not rec[ommend] fusion." He also stated the claimant was "not a candidate for disc replacement." He referred the claimant to a pain clinic (Tr. 435-38).

### Medical Source Statements

A medical source statement dated December 5, 2010, from Dr. Dorinda Faulker appears in the record. Dr. Faulkner opined that Claimant could lift and carry five pounds frequently and fifteen occasionally. He could stand or walk continuously for fifteen minutes, and could stand or walk two hours total in an eight-hour workday, but would require frequent breaks. She opined he could sit continuously for only thirty minutes at a time and for a total of three hours in an

3

eight-hour workday. She opined that he could never climb, balance, stoop, kneel, crouch, or crawl; and could occasionally reach and frequently handle if trunk movement was not required. She opined that he could frequently finger, feel, see, speak, and hear, although she noted his hearing is reduced. She also opined that he should avoid any exposure to extreme cold, extreme heat, vibration, hazards, and heights. She opined that claimant would have to lie down or recline on the job to alleviate his symptoms of pain frequently, meaning every 30 to 60 minutes for approximately an hour. She recommended that the Claimant's limitations would last for at least twelve months (Tr. 448-49).

Michael Gaddy, a Physician's Assistant to Dr. Jon W. Rogers, D.O, completed a medical source statement on November 26, 2010. Mr. Gaddy, the claimant's treating Physician's Assistant, recommended that the claimant could frequently carry fifteen pounds; stand or walk continuously for 30 minutes at a time, and for a total of three hours in an eight-hour workday; and sit continuously for 30 minutes at a time, and for a total of three hours in an eight-hour workday. He recommended that the claimant's ability to push and pull would be limited by his back pain. Mr. Gaddy recommended that the claimant should never climb, stoop, kneel, crouch, or crawl; could occasionally balance, reach, finger, feel, see, and hear; and could frequently handle and speak. He further recommended that the claimant avoid any exposure to extreme cold or heat, weather, wetness or humidity, vibration, hazards, and heights, and avoid moderate exposure to dust or fumes. He opined that the claimant would be required to lie down or recline three times per day for two to three hours at a time. He stated that pain limits all of claimant's activities. Mr. Gaddy noted that the form was "completed in part as stated by Mr. Tune." Dr. Rogers approved of the statement by signing it (Tr. 467-68).

On March 25, 2011, Dr. Ceola, the claimant's surgeon, made the following updated

4

statement:

> The preoperative MRI without contrast from 10/27/2008 showed a broad-based disc herniation on the right with impingement of the nerve root and effacement of the neural foramen at L4-5 and also at L5-S1 a focal disc rupture as well. Both of these caused nerve root impingement and symptoms consistent with nerve root impingement. Patient underwent a lumbar laminectomy with discectomy. This corrected the underlying nerve root impingement. Unfortunately, the patient continued to have ongoing back and nonradicular pain resulting in the inability to ambulate effectively, so the patient would qualify for 1.04 with herniated nucleus pulposus and neural foraminal stenosis and nerve root compromise preoperatively. Postoperatively, would qualify under the pseudoclaudication but without radicular pain and resulting in his inability to ambulate effectively and need for frequent position changes as well.

(Tr. 471.)

Dr. Faulkner reviewed the claimant's records again and on March 30, 2011, stated: "Within a reasonable degree of Medical Certainty, I am of the opinion that Gary Lynn Tune . . . meets the required physical impairments of the above Listing 1.04 Disorder of the Spine" (Tr. 473).

*Agency Assessments*

Dr. Allan N. Levine reviewed the claimant's medical records for the agency. On December 10, 2010, Dr. Levine opined that the claimant's impairments do not meet or equal Listing 1.04 for disorders of the spine because his records do not show current evidence of nerve root or spinal cord compromise required in the listing. Dr. Levine determined the claimant could lift 25 pounds occasionally and ten pounds frequently; sit for six in an eight-hour workday (with customary breaks); stand for four hours in an eight-hour workday, but less than 45 minutes at one time; walk for two hours in an eight-hour workday, but less than 30 minutes at a time; manipulate stairs or ramps, kneel, crouch, and stoop occasionally, but not repetitively; and push and pull up to 30 pounds. Dr. Levine recommended that the claimant avoid ladder or scaffolds, crawling, unprotected heights, heavy vibratory machinery, or extreme cold exposure (Tr. 463-

64).

*ALJ Hearing*

Claimant Tune appeared in person at a hearing before an Administrative Law Judge (ALJ) on December 9, 2010 (Tr. 47-82). He was represented by counsel, who argued that the claimant's impairments met Listing 1.04, and that he is not capable of even sedentary work.

The claimant testified he drives short distances two or three times per week to shop, but is unable to work due to back pain. The claimant testified that Dr. Faulkner examined him only once. Claimant opined that he could lift about seven pounds and could walk approximately a quarter mile, could stand for fifteen or twenty minutes, and could sit for about twenty or thirty minutes. He also stated he has trouble hearing and seeing. He reported that he owns a hearing aid, but doesn't wear it. He testified that he lies down 80 percent of the time, and is unable to do any house work, including laundry and cooking. He testified that he can go shopping for 15 or 20 minutes before he must sit down. He testified that Dr. Brooks recommended the placement of a spinal stimulator in his back, but he could not afford it.

A vocational expert, Janice Hastert also testified at the hearing. She testified that an individual of the claimant's age, education, and work experience, who could perform sedentary work, but could not climb ladders, ropes, or scaffolds, and could not crawl or crouch; could occasionally climb stairs and ramps, and occasionally balance, stoop, or kneel, but would need to avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, moving machinery, and unprotected heights, and could not perform jobs that require fine hearing, would not be able to perform the claimant's past work as a deckhand or a logger, but could perform sedentary, unskilled work such as a document preparer, semiconductor loader, or eyeglass polisher. Upon questioning from the claimant's attorney, the vocational expert testified that a

6

claimant who required work breaks of up to an hour during the workday would be precluded from all work.

A second ALJ hearing was held on March 31, 2011, for the purpose of introducing the updated medical statements from Dr. Levine, Dr. Ceola, and Dr. Faulkner (Tr. 30-47).

*ALJ Opinion*

The ALJ rendered a decision denying benefits on April 26, 2011 (Tr. 14-24). The ALJ found that the claimant had not engaged in substantial gainful activity since June 7, 2008, his alleged disability onset date. The ALJ found that the claimant had the following severe impairments: status post L4-5 discectomy, left-side lumbar radiculopathy, L4-5 disc protrusion and L5-S1 disc herniation, each complicated by obesity (Tr. 16).[1] The ALJ found, however, that the claimant's impairments do not meet or medically equal an impairment or impairments listed in the regulations.

The ALJ found that the claimant had the Residual Functional Capacity (RFC) to perform light work, as defined in the regulations, except he can lift and carry up to ten pounds frequently and 25 pounds occasionally; push and pull up to 30 pounds; sit for six hours in an eight-hour day, with customary breaks; stand for four hours in an eight-hour day, but for less than 45 minutes at a time; and walk for two hours in an eight-hour day, but for less than 30 minutes at a time. The ALJ found that the claimant could climb stairs and ramps occasionally and perform occasional crouching and stooping, but not repetitively. The ALJ further found that the claimant should avoid work around ladders, scaffolds, crawling, unprotected heights, vibratory machinery,

---

[1]The ALJ found *not severe* the claimant's hearing loss because it causes no more than the minimal functional limitations to his ability to complete work related activity; *not severe* the claimant's depression and anxiety because they had not resulted in marked limitations or repeated episodes of decompensation; and *non-medically determinable* his far sightedness (Tr. 16).

and exposure to extreme cold, was limited to occupations that do not require fine hearing ability, but had unlimited use of his upper extremities for fine and gross manipulation.

In making the RFC determination, the ALJ found not credible the claimant's subjective statements of pain and other symptoms. The ALJ noted the claimant's minimal use of medications, his daily activities, and his work history in discounting his credibility. The ALJ also discounted the opinions regarding disability expressed by Dr. Ceola and Dr. Faulkner because their opinions were inconsistent with the objective medical evidence, and based largely upon the claimant's subjective complaints. The ALJ followed the opinion of Dr. Levine, an agency consulting physician, because Dr. Levine was more familiar with the listings, and his opinion more accurately reflected the objective medical evidence.

<h3 align="center">LEGAL STANDARDS</h3>

### *Standard of Review*

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one

listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005). If the claimant does not have a listed impairment, but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other job that exists in the national economy. *Id.*

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence, and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In this appeal, the claimant argues that the ALJ erred 1) in not finding Claimant disabled based upon the listings; 2) in failing to properly consider the claimant's obesity; and 3) in discounting the claimant's credibility.

*Meeting or Equaling a Listing*

A claimant is eligible for benefits if he or she has a condition that "meets or equals" an impairment designated by the Commissioner. The listing of impairments, found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, includes specific criteria for each designated impairment. If a claimant meets the criteria for a given impairment, the agency presumes he or she is disabled. *See* 20 C.F.R. § 1520. A claimant may also show disability presumptively by demonstrating that his or her symptoms are equal in severity to those described in a listing. 20 C.F.R. § 404.1526. The Eighth Circuit holds that an ALJ does not err by failing to explain why an impairment does not equal a listed impairment, "as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). To meet or equal a listing, a claimant's impairment "must meet all of the specified medical criteria" established by the Commissioner. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004)).

As relevant here, Listing 1.04, for disorders of the spine, requires evidence of the compromise of a nerve root or the spinal cord with either nerve root compression "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)" 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A, or "spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging,

manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively," Listing 1.04C.

The ALJ discussed Listing 1.04 at two points in her opinion. At step 3 of the analysis, the ALJ described the criteria necessary to meet or equal a listing, then stated, "I have reviewed all of the evidence and concludes [sic] that the claimant's severe impairments do not meet or equal the severity of any listing" (Tr. 17). The ALJ again considered Listing 1.04 in her discussion of the claimant's RFC. The ALJ acknowledged that Dr. Faulkner opined that the claimant's impairments were of the severity contemplated by the listing. The ALJ gave little weight to Dr. Faulkner's opinion, however, because there was no evidence that Dr. Faulkner had examined the claimant and her opinion was based only upon the reports of treating and examining physicians. The ALJ further found that there was no evidence that Dr. Faulkner was familiar with the Commissioner's listing of impairments (Tr. 21-22). The ALJ also discredited Dr. Ceola's post-surgical opinion (which also recommended that the claimant's impairments met or equaled the listing) because it was "based largely on the claimant's subjective complaints" (Tr. 21).

Instead, the ALJ gave great weight to the opinion of the non-treating, non-examining, consulting physician Dr. Levine, because she believed Dr. Levine to be the most familiar with the Social Security Listings, and his opinion most consistent with the medical record. The ALJ noted that Dr. Levine did not review the updated opinions of Dr. Faulkner and Dr. Ceola, but determined that to be of little consequence because as opinions, they were not objective medical evidence.

In determining whether a claimant's impairments are medically equivalent to a listed impairment, the regulations direct the ALJ to consider all the evidence in the record, including

objective medical evidence and the opinions of medical experts. See 20 C.F.R. § 404.1526. Generally the opinion of a treating physician is given controlling weight so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount the opinion of a treating physician, however, when other medical opinions are better supported by medical evidence, or where a treating physician renders inconsistent opinions. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). Generally, the opinions of examining medical sources are given greater weight than the opinions of non-examining sources, and the opinions of specialists in a medical sub-field are given greater weight than those of non-specialists. Any medical opinion regarding disability may be discounted by the ALJ, however, because the determination whether an individual is disabled is left to the Commissioner. 20 C.F.R. § 404.1527(d)(1). In determining whether a claimant is disabled, an ALJ is directed to evaluate the opinion of a consulting physician based upon the evidence in the record and upon the source's area of specialty or expertise in the listings. 20 C.F.R. § 404.1527(e)(2)(ii). Regardless of the source of the opinion, the ALJ must explain and give good reasons for the weight accorded to the various opinions. *Id*.

Here, the ALJ gave the greatest weight to the opinion of Dr. Levine, a non-treating, non-examining physician who only reviewed the claimant's medical records. In so doing, the ALJ rejected the opinions of the claimant's treating surgeon, Dr. Ceola, and of an examining physician, Dr. Faulkner. As stated above, the ALJ was free to give greater weight to Dr. Levine's opinion, as long as she articulated the basis for the weight given to the opinion and the reasons for discounting the opinion of the treating and examining physicians. The Court finds

12

that the ALJ sufficiently explained her reasoning in finding that the claimant's impairments did not meet or equal Listing 1.04. Even if the Court disagreed with the weight afforded to these opinions, the Court is bound to affirm an ALJ's decision that is supported by substantial evidence. *See Robinson*, 886 F.2d at 175 (where it is possible to draw two inconsistent conclusions from evidence, and one conclusion represents ALJ's findings, count must affirm ALJ's decision). For these reasons, the Court finds the ALJ did not err in crediting the opinion of Dr. Levine over the opinions of Dr. Ceola and Dr. Faulkner.

### *Claimant's Obesity*

The claimant also argues that the ALJ failed to properly consider obesity in calculating the claimant's RFC. An ALJ need only reference a claimant's obesity to avoid reversal. *See Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (citing *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004)). Here, the ALJ noted the claimant's obesity, and determined that his obesity "contributes to the severity of his impairments" (Tr. 16, 19). The ALJ then discussed at length the claimant's complaints and the severity of his impairments. The Court finds these references to the claimant's obesity and its effect the severity of his impairments were sufficient to show that the ALJ considered the claimant's obesity in determining his RFC.

### *Credibility Determination*

In assessing a claimant's credibility, an ALJ must consider 1) the claimant's daily activities; 2) the duration, intensity, and frequency of pain; 3) the precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572

F.3d 520, 524 (8th Cir. 2009)); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ is not required to explicitly discuss each *Polaski* factor, so long as the ALJ acknowledges and considers them before discounting a claimant's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). An ALJ may find a claimant's allegations not credible where there exist "inconsistencies in the record as a whole." *Id.* A court will defer to an ALJ's credibility determination "if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)).

Substantial evidence on the record as a whole supports the ALJ's determination that the claimant's subjective complaints are not credible. The ALJ considered the factors set out in *Polaski,* including the claimant's activities, pain, precipitating and aggravating factors, medications, functional limitations, work history, and available medical evidence. The ALJ specifically identified inconsistencies between the claimant's testimony regarding his pain and his report that he is capable of routinely feeding his goats and chickens, going outside two or three times per day, shopping for groceries, and driving two to three times per week. The ALJ further pointed out that despite his complaints of intense pain, the claimant has used very few medications, and that despite being released for light duty work by his physician, he never attempted to gain employment after July 2008. Both of these facts weighed against the claimant's credibility. In the Court's view, these constitute "good reasons" for discounting the claimant's testimony regarding his subjective complaints. Thus, the Court finds no basis in the record to overturn the ALJ's credibility determination.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. Accordingly, the decision of the Commissioner of Social Security should be affirmed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED: March 11, 2013**

                                      /s/ ***David P. Rush***
                                      **DAVID P. RUSH**
                                      **United States Magistrate Judge**